## PUBLIC FINANCE CORPORATION *v.* GEORGE XARHAKOS

### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. 14-626-8982

Argued November 4, 1963—decided February 20, 1964

*Paul Pasquariello,* of Torrington, for the appellant (plaintiff).

*Thomas P. Heslin,* of Hartford, for the appellee (defendant).

JACOBS, J. The Public Finance Corporation, hereinafter referred to as the finance company, of Hart-

ford, a duly licensed small loan company, brought this action to recover the balance due it on a note, alleging, in substance, that on May 19, 1961, it made a loan to the defendant in reliance on a written statement given to it by the defendant in which he stated that the total amount of his debts, excluding his then indebtedness to the plaintiff, was $2540. It is further alleged that this statement was materially false in that in addition to the debts disclosed, the defendant was then, in fact, indebted to various other creditors in substantial amounts. The execution, delivery and terms of the note are not in dispute. The defendant has pleaded discharge in bankruptcy as a special defense.

The findings made by the trial court, with such corrections as the plaintiff is entitled to, disclose these facts: The defendant and his wife were separated and had been living separate and apart for about eight years prior to May 19, 1961. He was employed as a chef at the Heublein Hotel, in Hartford, where he also maintained his residence. He and his wife were perennial borrowers of the finance company, having singly or jointly over the years received twenty prior loans which were either paid in full in due course or by renewal note as the balance was reduced from time to time. On May 19, 1961, having arranged with the manager of the finance company by telephone for an additional loan, the defendant signed and delivered to the finance company the note which is the subject matter of this suit, in the sum of $600, which covered a balance of $460.42 in discharge of a former loan and $5 for life insurance, thus making available to the defendant $134.58 in cash. His purpose in requesting the loan was to buy clothes for his children. When he went to the office of the finance company to arrange for the additional loan, he was asked to furnish it with a financial statement which was a

single sheet of paper containing on its face "more than 100 rectangles indicating different areas of information" and was "calculated to assist [the finance company] in determining an applicant's ability to repay the loan." The manager of the finance company, who was familiar with the defendant's "previous accounts," filled in and completed the printed form, showing the indebtedness of the defendant to the finance company as well as two other loans he had received. The statement of May 19, 1961, corresponded closely to and was substantially the same as a written statement which the defendant had given the finance company on December 13, 1960, except for relatively minor variations in amounts. The printed form also contained a rectangular section in the lower right-hand side within which appeared this caveat: "NOTE: If the applicant did not personally fill out this statement in his/her handwriting, he/she must write at (x) 'I have no other debts than stated above.'" The defendant did not write the words quoted above on the line designated as (x) nor was he directed to do so by the manager. The discharge order, dated March 26, 1962, recited that the defendant was discharged from all debts and claims provable under the Bankruptcy Act, "except such debts as are by said Act, excepted from the operation of a discharge in bankruptcy." In his bankruptcy schedules, the plaintiff was duly listed as a creditor. We agree with the plaintiff that an examination of the schedules which were received in evidence showed that in addition to those debts disclosed in the financial statement the defendant was indebted to other creditors in rather substantial amounts.

The trial court found that the defendant, while he executed the financial statement, did not at any time make a materially false statement in writing respecting his financial condition; and it further found

that the finance company did not rely upon the statement in making the loan.

The Bankruptcy Act, § 17 (a) (2), as amended in 1960, provides in part: "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses of false representations, or for obtaining . . . an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive . . . ." 52 Stat. 851, as amended, 11 U.S.C. § 35 (a) (2) (Sup. 2, 1960); see *Consolidated Plan of Connecticut, Inc.* v. *Bonitatibus,* 130 Conn. 199; *Fidelity & Casualty Co.* v. *Golombosky,* 133 Conn. 317. "Loans secured by means of false financial statements come within this classification if it can be proved that the representations as to the debtor's financial condition were in fact false and were made with the intention of defrauding the creditor who relied thereon and was misled by them, and that the loan was in fact based upon such representation." *Personal Finance Corporation* v. *Robinson,* 27 N.Y.S.2d 6, 8; see 8B C.J.S., Bankruptcy, § 573; *Family Small Loan Co.* v. *Mason,* 67 F.2d 207 (4th Cir.); *In re Day,* 11 F. Sup. 400 (D. Mass.). "To bring a claim within the exception, from discharge, of money or property obtained by false pretenses or false representations, it must appear that the particular acts or statements were relied upon by the creditor in making the sale or loan, and it must further appear that such reliance was justified under the circumstances." 9 Am. Jur. 2d 586, Bankruptcy, § 783. "It must . . . affirmatively appear that such representations were knowingly and fraudulently made, and that they were relied upon by the other

party." 1 Collier, Bankruptcy (14th Ed.) ¶ 17.16 [3]; see 7 Remington, Bankruptcy (6th Ed.) § 3143; notes, 133 A.L.R. 440, 17 A.L.R.2d 1208.

"Let us take one aspect of this case: reliance.... [R]eliance in the end is to a considerable degree a matter of one's opinion." *Wylie* v. *Ward,* 292 F.2d 590, 592 (9th Cir.). "It is clear that failure to list standing alone, unless relied upon by the creditor, is insufficient to upset the bankruptcy discharge." *Public Finance Corporation* v. *Callopy,* 12 Ohio Op. 2d 317, 318. That the loan in the instant case was hurriedly made and hastily given is borne out by the finding that "[t]he entire conference between the defendant and the plaintiff's manager on May 19, 1961, took a very short time" and by the financial statement itself, which is skimpy, to say the least, and is singularly unadaptable for the purpose it was designed to serve. It was reasonable, therefore, under the circumstances, for the court to infer that the finance company obtained the signed statement as a pro forma compliance with a requirement that such a statement be furnished with the loan application. The statement signed by the defendant was untrue, but the circumstances attending its submission and the conduct, inter se, between the finance company and the defendant showed, not reliance on the statement, but rather upon the defendant's history with the finance company. This history began in 1948 and covered some twenty loan transactions.

Courts, generally speaking, under somewhat similar, if not identical, circumstances have hesitated to find reliance upon the statement where, as here, a debtor has a long history with a loaning company and has made good on all his previous loans. Thus, in *Household Finance Corporation* v. *Groscost,* 230 F.2d 608 (6th Cir.), a finding that

the finance company did not in fact rely upon the financial statement was affirmed on appeal when it was shown that the company had dealt with the debtors for five years and knew or should have known of their financial condition; in *In re Supnick,* 160 F. Sup. 355 (E.D. Pa.), where during the fifteen years prior to 1956 the debtor had obtained approximately twenty loans from the trust company, the court found that the manager of the trust company relied upon his general knowledge of the applicant's prior transactions, not upon the statement; in *In re Barnhart,* 91 F. Sup. 453 (N.D. Ohio), where the debtor had made six renewals of the loan, the court held that it cannot be considered that the financial statement was seriously any part of the transaction; and in *In re Anderson,* 104 F. Sup. 599 (E.D. Wis.), nonreliance was found where loans had been refinanced or remade several times over a period of eight years. A case precisely in point is *Excel Finance Treme, Inc.* v. *Noel,* 138 So. 2d 654, 655 (La. App. 1962), where it was shown that the finance company "had been making loans to the defendant over a number of years; that defendant in all that time had never been delinquent on any payment;" and that the plaintiff's manager "was fairly well familiar with defendant's affairs." The court said (p. 655): "It is entirely clear that, over a period of years, this defendant had borrowed money some fifteen times from this plaintiff; that his account had never been delinquent; and that all defendant had to do to obtain cash money over and above what he already owed the plaintiff was to ask for it." "It is apparent," the court concluded (p. 656), "that a somewhat easy and loose arrangement or understanding had developed between the plaintiff and the defendant, and on this last occasion, as on many others, plaintiff accepted defendant's note, gave him the money without the so-called

financial statement actually playing any part whatsoever in it." And we may say that it is apparent to us from the record that the financial statement was taken by the finance company and completed by its manager, not with any serious purpose of relying upon it, but merely as a ceremonial device obtained perfunctorily as part of the loan transaction.

The court was amply warranted in concluding that the plaintiff has fallen short of proving that the financial statement was given with fraudulent intent or that the loan was made in reliance upon it. The findings cannot be disturbed on appeal.

The plaintiff assigns error in the court's failure to "require the defendant actually and specifically to rest his case before proceeding to a decision." Reference to the transcript discloses that after the last witness had concluded his testimony, the following occurred: "The court: Anything further? Mr. Heslin: Nothing further, Your Honor. Mr. Pasquariello: Can we summarize it, Your Honor? Mr. Heslin: Well, I will rest when I get a chance. The court: I am willing to listen. Mr. Heslin: I have no desire to make any argument. The court: All right. You don't have to. What do you wish to say? [Mr. Pasquariello argued to the court]."

The plaintiff failed to call the court's attention to any claimed error or omission which may have occurred during the course of the trial; indeed, after counsel for the defendant said, "Nothing further . . . ," the plaintiff sought and was granted permission of the court to summarize its case and argue on the merits. The plaintiff sat back and took the chance of a favorable outcome. See *Furber* v. *Trowbridge,* 117 Conn. 478, 482. "As a general rule, no objection can be made because of errors, irregularities or omissions in the conduct of a trial by a party who consents to the action taken, or does not

assert his rights, or who takes no steps to have the irregularities corrected." 88 C.J.S. 154, Trial, § 54. "Errors and irregularities in the conduct of the trial may be waived or cured by some affirmative act of the complaining party amounting to an express or implied consent to the improper procedure." 89 C.J.S. 501, Trial, § 658. "[This] construction is in harmony with modern procedural concepts, which regard with disfavor the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, the assignment of such errors as grounds of appeal. Such methods amount to trial by ambuscade of the judge." *State* v. *DeGennaro,* 147 Conn. 296, 304.

There is no error.

In this opinion DEARINGTON and KINMONTH, Js., concurred.