SWANSON PETROLEUM CORPORATION, A NEBRASKA CORPORATION, APPELLANT, v. GEORGE CUMBERLAND, APPELLEE.

167 N. W. 2d 391

Filed April 25, 1969. No. 37034.

Dan J. Whiteside, for appellant.

John P. Kelly and Atkinson & Kelly, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and WILLIAM C. SMITH, JR., District Judge.

SMITH, WILLIAM C. JR., District Judge.

This is an action by Swanson Petroleum Corporation, plaintiff and appellant herein, against George Cumberland, defendant and appellee herein, commenced in the district court for Douglas County, Nebraska, consisting of five causes of action in which plaintiff sought to recover $3,848.54, plus interest and costs, for the value of goods and merchandise obtained by the defendant and paid for by certain insufficient fund checks, and alleged to have obtained the goods by false pretenses. A demurrer to plaintiff's petition was sustained and plaintiff filed an amended petition, in which plaintiff sought damages in the amount of $3,848.54, plus interest and costs, for the value of the goods obtained by the defendant and paid for by insufficient fund checks, allegedly obtained by false pretenses.

Defendant answered and alleged he filed a voluntary petition in bankruptcy wherein plaintiff was listed as a creditor and that plaintiff had received a dividend on its claim filed therein, and defendant's legal liability thereon was discharged by operation of law. Defendant further alleged that plaintiff was aware of defendant's financial condition and had no right to rely on a representation, if any, made by the defendant and plaintiff could not believe it to be true because of plaintiff's knowledge of defendant's financial condition. The answer further stated that defendant was charged three-quarters of a cent per gallon of gas which was applied to defendant's indebtedness, which plaintiff increased by the amount of the insufficient fund checks from defendant to plaintiff, and that plaintiff waived any right of

action against the defendant by increasing the open account.

A reply was filed by plaintiff, which admitted the defendant's discharge in bankruptcy, admitted receiving payment on the debt both before and after September 1, 1954, alleged it believed the alleged false representations to be true, and denied all other allegations of the defendant.

The trial court entered judgment that plaintiff had not sustained its burden of proving that the property was obtained by false pretenses, and consequently, the indebtedness did not come within Title 11, U. S. C. A., § 35, p. 271. Motion for new trial was overruled by the order of the trial court. From this judgment an appeal has been taken.

The errors assigned as grounds for reversal are that the court erred in finding that plaintiff did not sustain its burden of proving that the property was obtained by false pretenses, and in its consequent finding that the indebtedness did not come within Title 11, U. S. C. A., § 35, p. 271.

Before proceeding with a consideration of the assignments of error the evidence adduced herein will be reviewed.

The evidence discloses that plaintiff, as a corporation, was a wholesale distributor of Phillips 66 products and the defendant was a dealer of plaintiff, located at 3526 Q Street, Omaha, Nebraska, from December 10, 1962, until September 1965, and did business under the name of "George's 66 Service."

Defendant gave five checks to plaintiff between September 1, 1964, and through June 23, 1965, in a total amount of $3,848.54. The evidence of the president of plaintiff corporation was that it had received insufficient fund checks prior to September 1, 1964, from the defendant that were eventually paid. The check identified as exhibit 1, dated September 1, 1964, in the sum of $1,125.70, and the check identified as exhibit 2 dated

September 17, 1964, in the sum of $1,031.43, were returned insufficient funds and these were added to the ledger account kept by the plaintiff. The evidence also showed that the defendant already had an unpaid account with plaintiff of some $3,000. The evidence discloses that an agreement was then made by plaintiff and defendant to place a surcharge of three-quarters of a cent per gallon on each gallon purchased thereafter, to apply against total indebtedness of defendant to the plaintiff, along with other surcharges not material in this case. This was also testified to by the defendant and defendant's wife and was conceded by the plaintiff. Further evidence discloses that plaintiff contacted defendant's wife about the difficulty and some negotiations took place about turning over titles of a truck and automobile to plaintiff as security, but this never was done as the parties all agreed in their testimony. Plaintiff informed defendant according to testimony of its president that the defendant was on a cash basis from now on and also stated that he had so informed defendant prior to September 1, 1964, because of earlier insufficient fund checks.

Defendant continued to do business with plaintiff and on June 18, 1965, a check of $714.16, on June 23, 1965, a check of $578.48, and on June 23, 1965, a check of $398.77 were given to the plaintiff for invoices. The president of plaintiff also testified the merchandise would have not been delivered if he or its employees had known the checks given the plaintiff were not good. The testimony disclosed that each check was added to the ledger of the plaintiff. Plaintiff continued to sell to defendant until sometime in September 1965, for cash only.

The record shows that defendant filed a voluntary petition in bankruptcy on September 15, 1965, and obtained a discharge from bankruptcy on November 30, 1965. The plaintiff filed a claim in the bankruptcy proceedings for $6,809.62, on which the plaintiff received a dividend of $552.14, from the referee in bankruptcy.

Whether or not the assignments of error, or any of them, afford a basis for a reversal of the judgment depends on the record as it has been summarized and the applicable legal principles.

Title 11, U. S. C. A., § 35, p. 271, provides as follows: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations * * *."

The question here whether the giving of an insufficient fund check is obtaining money or property by false pretenses or false representations is sufficient to bar the discharge of the debt of the bankrupt. There seems to be no Nebraska case on this particular point.

However, in Blue Bonnet Creamery, Inc. v. Gulf Milk Assn., Inc. (La. App.), 172 So. 2d 133, the court said: "It must be conceded an obligation arising from property obtained by the issuance of worthless checks is dischargeable in bankruptcy unless the debtor was guilty of misrepresentation with intent to defraud in connection with the issuance of such checks. This is inevitably so because alleged non-dischargeability of such an obligation is predicated on 11 U. S. C. A., § 35 which requires proof of fraud to bar discharge." The above case has application in this case as will be pointed out subsequently in this opinion.

In this case the plaintiff seeks to recover damages on insufficient fund checks given for merchandise. Does the mere giving of such checks bar defendant's discharge in bankruptcy of the debt created? We think not.

In Robinson v. J. R. Williston & Co., 266 F. 970, the court stated: " 'The Bankruptcy Act is very liberal towards the bankrupt as to his discharge, and the act in so far as it relates to his discharge is to be given a strict construction in favor of the bankrupt. The purpose of the act is to release honest debtors from the burden of their debts.' " The court further stated: "It is true that

a check purports to be drawn upon a bank where the maker has funds or credit, and from his act in giving the check this may be inferred. If the bankrupt had made an oral statement at the time the check was given, that it was good, or would be paid when presented, or that his account was overdrawn, but that he had made arrangements with the bank on which it was drawn by which it would be paid, none of these oral statements would have been a bar to his discharge."

The syllabus in the above-cited case states: "The giving of a check drawn on a bank in which the account of the bankrupt has been overdrawn does not constitute a 'materially false statement in writing' within Bankruptcy Act * * * relating to denial of discharge."

So we must look further than the checks to determine if the defendant is barred from discharge in bankruptcy in this case, as there was no statement in writing other than the checks in question.

In 1 Collier on Bankruptcy (14th Ed.), § 17.16, p. 1634, it is stated: "The frauds included in the portion of clause (2) under discussion are those which involve moral turpitude or intentional wrong; fraud implied in law, which may exist without imputation of bad faith or immorality is insufficient. It must further affirmatively appear that such representations were knowingly and fraudulently made, and that they were relied upon by the other party." As stated in footnote 23, page 1638: "The court said that § 17 a (2) excepts from discharge only those debts in creation of which there was actual, overt, false prestense or representation, and the only kind of fraud which will prevent a discharge under this section is that committed by fraudulent misrepresentations of fact or by such conduct or artifice having a fraudulent purpose as will throw one off his guard and cause him to omit inquiry or examination which he would otherwise make. Thus, of course, actual misrepresentations of solvency in order to induce the sale of goods would render the claim for payment non-dis-

chargeable." 1 Collier on Bankruptcy (14th Ed.), § 17.16, p. 1628, follows Title 11, U. S. C. A., § 35, p. 271.

The burden of proof is on the plaintiff to prove that the property was obtained by false pretenses or false representations to prevent the bankrupt from being discharged of the debt in question. As pointed out hereinabove in Blue Bonnet Creamery, Inc. v. Gulf Milk Assn., Inc., *supra;* and 1 Collier on Bankruptcy (14th Ed.), § 17.16, p. 1634, and footnote 23, p. 1638, that fraud must be proved.

To prove fraud in Nebraska, we cite the rule laid down in Allied Building Credits, Inc. v. Damicus, 167 Neb. 390, 93 N. W. 2d 210, quoting Peterson v. Schaberg, 116 Neb. 346, 217 N. W. 586, where it was said: " 'To maintain an action for damages for false representation, the plaintiff, in substance, must allege and prove by a preponderance of the evidence the following elements: (1) What representation was made; (2) that it was false; (3) that the defendant knew it was false, or else made it without knowledge as a positive statement of known fact; (4) that the plaintiff believed the representation to be true; (5) that the plaintiff relied and acted upon the representation; (6) that the plaintiff was thereby injured; and (7) the amount of the damages.' " In the case before us the plaintiff must prove the above elements.

Before discussing these elements the court wishes to cite Dyck v. Snygg, 138 Neb. 121, 292 N. W. 119, in which the court held: " 'The general rule is that, where ordinary prudence would have prevented the deception, an action for the fraud perpetrated by such deception will not lie.' "

In Nathan v. McKernan, 170 Neb. 1, 101 N. W. 2d 756, the court stated: "Where one is put upon inquiry, he is charged with notice of all such facts as he would have learned by reasonable inquiry."

In this case the evidence showed that the plaintiff had been doing business with the defendant over a long

period of time and had received insufficient fund checks before, although they were later paid, and the plaintiff knowing this, and further knowing the financial difficulties of the defendant, it seems very improbable that plaintiff could or would place any reliance upon the checks in question as is required in an action for damages by false representation. Further there was no evidence that plaintiff believed or relied on any representations of the defendant or believed them to be true. The necessary elements have not been proven as required in Nebraska to prove fraud. Allied Building Credits, Inc. v. Damicus, *supra*. Certainly, the plaintiff in this case failed to exercise ordinary prudence based upon the facts as disclosed by the evidence herein as is required. Dyck v. Snygg, *supra*. Such facts as above stated being known by the plaintiff would put the plaintiff, or should have put plaintiff, on inquiry. Nathan v. McKernan, *supra*.

"Actual or intentional fraud in obtaining property is necessary to save the liability from the operation of the discharge; fraud implied in law is insufficient." 8B C. J. S., Bankruptcy, § 573 c, p. 55. This is quoted with approval in Horner v. Nerlinger, 304 Mich. 225, 7 N. W. 2d 281, in which the court goes on to say: " 'Not all frauds come within this exception to the operation of the discharge. * * * The character of the fraud necessary to save a claim from the operation of the discharge is an actual or positive fraud knowingly and intentionally committed; fraud implied in law or mere actionable or implied fraud which purported judgment with civil action without moral turpitude or intentional wrong is not sufficient to defeat such discharge.' "

To defeat the discharge of the bankrupt a showing of moral turpitude or intentional wrong must be also shown. The evidence in this case does not show the defendant guilty of either.

In the opinion of this court the plaintiff has not sustained its burden of proving that the property was ob-

tained by false pretenses as required in this state, and therefore the indebtedness does not come within Title 11, U. S. C. A., § 35, p. 271.

In accordance with this opinion, the judgment of the trial court dismissing plaintiff's action is affirmed. Costs are taxed to plaintiff.

AFFIRMED.