BENEFICIAL FINANCE COMPANY OF MANCHESTER *v.*
HOWARD P. MACHIE, JR., ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 12-6804-1448

Argued July 7—decided August 29, 1969

*John J. Mahon,* of Manchester, for the appellant (named defendant).

---

*Dominic J. Squatrito,* of Manchester, for the appellee (plaintiff).

JACOBS, J. On June 7, 1967, Howard P. Machie, Jr., and his wife, Barbara, refinanced a previous obligation to Beneficial Finance Company of Manchester and received from the finance company some additional money. The Machies received additional cash, after certain deductions were made, in the amount of $60.12. Evidencing the loan, the Machies executed and delivered their note in the sum of $1000, payable in twenty-four monthly instalments of $51.16 each, commencing on July 7, 1967.

The record shows that, at the time the note sued on was executed, the Machies signed and delivered a financial statement disclosing an income of $105 per week. The statement also recited that it was given "for the purpose of showing my ability to repay the same and to induce you [the finance company] to grant said loan." Under the heading, "Be Sure to Include All Debts Owed," appear the following items: Beneficial Finance $924.88; W. T. Grant $400; Sears Roebuck $600; Hartford National Bank $2200 (secured); Peoples Home Supply $90; Thus a total amount $4214.88 was listed, of which sum $2014.88 represented unsecured debts. After listing these debts, Machie in his own handwriting wrote across the face of the financial statement, "No other debts." Between July 7, 1967, and October 24, 1967, the Machies made four payments on the note, leaving a balance due thereon of $1014.65. On November 29, 1967, Machie filed a petition in bankruptcy, and on a schedule accompanying the petition he listed his obligation to the finance company. He was duly adjudicated a bankrupt, and on March 21, 1968, an order of discharge was entered. In his bankruptcy schedules, in addition to his obligation to the finance company, he listed the following unsecured creditors

which he had omitted from the financial statement: Chorches Motors $300; East Hartford Credit Union $254.20; General Electric Credit Co. $272; Drs. Guinan and/or Stanton $47; Gulf Oil Corporation $150; Hartford National C.A.P. account $222.70; Drs. Keeney and/or Demko $91; Manchester Memorial Hospital $15; Mobil Oil Corporation $255.51; North End Pharmacy $47; Federal Credit Bureau $123.85; Spiegel, Inc. $345.96; Senak Company of Connecticut $5. The trial court found that Machie forgot to list thirteen accounts on the financial statement which were owing on June 7, 1967, totaling more than $2000 in preexisting debts.

The trial court concluded that Machie knowingly and fraudulently made representations concerning his outstanding obligations which he knew would be relied upon by the finance company in making the loan, and that the finance company "relied on the representation of the defendants in their application and financial statement."

The general problem presented for determination is not one of first impression before this court. See *M-A-C Loan Plan, Inc.* v. *Cooper,* 23 Conn. Sup. 184, 1 Conn. Cir. Ct. 169; *Public Finance Corporation* v. *Xarhakos,* 2 Conn. Cir. Ct. 469; *M-A-C Loan Plan, Inc.* v. *Crane,* 4 Conn. Cir. Ct. 29; *Beneficial Finance Co.* v. *Crane,* 4 Conn. Cir. Ct. 627; *Consolidated Plan of Connecticut, Inc.* v. *Cross,* 4 Conn. Cir. Ct. 641. The issue to be decided is whether the debt owed to the finance company is nondischargeable under § 17a (2) of the Bankruptcy Act. 74 Stat. 409, 11 U.S.C. § 35 (a) (2) (1964). The 1960 "Celler amendment" of § 17a (2) of the Bankruptcy Act must be read in conjunction with § 14c (3), which was amended at the same time as § 17a (2). 74 Stat. 408, 11 U.S.C. § 32 (c) (3) (1964). The legislative history of both sections demonstrates that it was the intent

of Congress to limit the false financial statement as a ground for complete denial of discharge in bankruptcy, while making it clear that debts incurred by means of such a statement would not be discharged in bankruptcy. In other words, it was the will of Congress to extend the scope of the exception where a materially false statement in writing was made. See S. Rep. No. 1688, 86th Cong., 2d Sess. (1960); 2 U.S. Cong. & Adm. News 2954 (1960); 1 Collier, Bankruptcy (14th Ed.) ¶ 17.01, p. 1578; 8 Remington, Bankruptcy (6th Ed.) § 3327 (Sup. 1969).[1]

Section 17a (2), in relevant part, provides: "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive . . . ." Once a person obtains a valid discharge in bankruptcy, as Machie has, he has a prima facie defense against all debts, and the burden of proof is then on the creditor to show that the debt is nondischargeable. *Sweet* v. *Ritter Finance Co.,* 263 F. Sup. 540, 542; *United States* v. *Syros,* 254 F. Sup. 195, 198. Not only does the burden of proof rest squarely on the creditor throughout the proceedings but he is also faced with the rule that all exceptions

---

[1] For valuable and comprehensive discussions on the effect of false financial statements on debts dischargeable in bankruptcy, see Rifkind, "Bankruptcy Law: Non-Dischargeable Debts," 45 A.B.A.J. 685; comment, "Effect of False Financial Statements on Debts Discharged in Bankruptcy—Section 17a (2) of the Bankruptcy Act," 21 La. L. Rev. 638; note, "Fraudulent Financial Statements and Section 17 of the Bankruptcy Act—The Creditor's Dilemma," 1967 Utah L. Rev. 281.

set forth in § 17a (2) are to be strictly construed. *Gleason* v. *Thaw,* 236 U.S. 558, 562. To recover, the creditor must show by a preponderance of the evidence that (1) the debtor made material representations; (2) at the time they were made he knew they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained loss as a result of the representations' having been made. See 8 Remington, op. cit. § 3320; 8A C.J.S., Bankruptcy, §§ 521(3)—521(14). All these elements must be proved to bring the debt within the exception to the discharge. *Tower Finance Corporation* v. *Winemiller,* 43 Ill. App. 2d 10, 17; *Beneficial Finance Co.* v. *Lathrop,* 207 So. 2d 220, 222 (La. App.); *Advance Loan Co.* v. *Bell,* 75 N.M. 204, 206; *Household Finance Corporation* v. *Altenberg,* 5 Ohio St. 2d 190; *Zerega Distributing Co.* v. *Gough,* 52 Wash. 2d 443, 445; *Beneficial Finance Co.* v. *Collins,* 150 W. Va. 655, 667; *First Credit Corporation* v. *Wellnitz,* 21 Wis. 2d 18, 23; note, 17 A.L.R.2d 1208.

We conclude that the record amply sustains the trial court's findings of fact and that the proper rule was applied in concluding that Machie's obligation to the finance company was not dischargeable in bankruptcy. See *Household Finance* v. *Hamer,* 248 Md. 567, 571; *H. A. Co. of Provo* v. *Campbell,* 17 Utah 2d 401.

There is no error.

In this opinion KOSICKI and DiCENZO, Js., concurred.