TIME FINANCE CORPORATION OF SPRINGFIELD *v.* WAYNE R. CLARK ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 13-6806-4191

Argued August 4—decided October 3, 1969

*Phillip E. Tatoian, Jr.,* of Thompsonville, for the appellant (named defendant).

*John W. Marino, Jr.,* of Hartford, for the appellee (plaintiff).

DEARINGTON, J. In its action the plaintiff sought to recover a balance due on a promissory note upon which, it claimed, the defendants, husband and wife, were obligated, jointly and severally. In their answer the defendants, by way of a special defense, allege that the obligation was discharged by a discharge in bankruptcy, which defense the plaintiff denied on the ground that the debt was incurred through a materially false financial statement of the financial condition of the defendants and was, therefore, not dischargeable under § 17a (2) of the federal Bankruptcy Act. 74 Stat. 409, 11 U.S.C. § 35 (a) (2) (1964). The court found the issues for the plaintiff as against the defendant Wayne Clark only, he having individually signed the financial statement, and he has appealed, assigning error in the denial of his

motion to correct the finding and in the court's conclusions. He is hereinafter referred to as the defendant.

The finding was predicated on conflicting evidence, and, since the trier is the sole arbiter of the credibility of witnesses, it is the trier's privilege to adopt whatever testimony it reasonably believes to be creditable. *Tartaro* v. *La Conte;* 157 Conn. 583, 584. The trial court adopted many of the defendant's additions to its finding, and some of those denied are without merit, for they were neither admitted nor undisputed. *Martin* v. *Kavanewsky,* 157 Conn. 514, 516. Moreover, other corrections which were sought and to which the defendant might be entitled would not change the result in any way. *Kobryn* v. *Kobryn,* 156 Conn. 638.

The following facts were found by the court. On February 3, 1967, Wayne Clark signed a financial statement listing his debts as $2163.73, together with seven creditors and a total indebtedness not in excess of $2200.[1] At the same time, Clark and his wife executed a note in favor of the plaintiff in the amount of $1944, payable in monthly instalments of $54 each for thirty-six months. Of the amount of the note, $546.74 was precomputed interest and $1397.26 the principal amount. Clark and his wife were already indebted to the plaintiff and as a result received $314.36 in cash. The plaintiff had engaged in nine prior loan transactions with Clark since 1953, and the note in question was a renewal note.

---

[1] The heading of the financial statement dated February 3, 1967, and signed by the defendant was as follows: "To induce you to grant a loan or extension of credit, and to show my ability to repay the same, I the undersigned hereby declare that a list of all my debts and liabilites is as follows:" Thereafter the defendant listed seven creditors, including a balance due the plaintiff in all totaling $2163.73. At the bottom of the statement, over the defendant's signature, the following appears: "I hereby state, affirm, represent and warrant to you that my total indebtedness and liabilities on this date do not exceed $2200.00."

The policy of the company required a financial statement prior to each loan. Clark had never defaulted in prior obligations transacted with the plaintiff. The plaintiff made no attempt to verify the truth of the representations in the financial statement made by Clark nor to verify whether he had failed to disclose all liabilities. The plaintiff did not fully rely on the statement.[2] The plaintiff actively solicited the defendant's business both before and after his adjudication of bankruptcy. On January 9, 1968, the defendant commenced bankruptcy proceedings and was declared bankrupt, together with his wife, on May 6, 1968. Schedule A-3 of the bankruptcy petition, when compared with the defendant's financial statement, indicated that debts incurred prior to February 3, 1967, were approximately $1500 greater than appeared in the statement and that the number of creditors as of February 3 had increased by nine.

The court concluded that the defendant's defense of a bankruptcy adjudication failed because of the falsity of the information appearing in his financial statement, that the false representations were made to obtain a loan from the plaintiff, that the plaintiff had renewed the note and increased the amount of the loan upon the representations appearing in the financial statement, and that the defendant's conduct constituted fraud. The court then rendered a judgment for the plaintiff in the amount of the balance due on the note.

[2] This paragraph in the finding was evidently predicated on the following evidence, adduced in the direct examination of the plaintiff's employee who handled the transaction and obtained the financial statement. Plaintiff's attorney: "Did you rely on this statement in granting this loan?" Witness: "To the greater majority, yes, sir." Defendant's attorney: "Objection. Will the witness clarify that 'greater majority?'" Plaintiff's attorney: "Yes, clarify the last statement." Witness: "First of all to grant a loan, it's based on many items. The financial statement isn't the only thing that enters into it, it's the greater part of it . . . ."

We first consider the defendant's contention that the plaintiff was obligated to verify the truth of the representations appearing in his financial statement and that because of its failure to do so it was estopped to complain that the loan was obtained by a false statement. In *Sherwood* v. *Salmon,* 5 Day 439, 448, the court, in commenting on fraud, stated: "I apprehend no authority can be found to warrant the doctrine, that a man must use due diligence to prevent being defrauded, otherwise he shall be entitled to no remedy. The truth is, redress is most commonly wanted for injuries arising from fraud, which might have been prevented by due diligence. . . . If a man may sustain an action for fraud, where ordinary prudence and care could have protected him against it, *a fortiori* he may where due diligence would have protected him." That a creditor may not have made a diligent and prudent investigation of a debtor's finances before extending credit would be no defense in an action on a promissory note, where the debtor pleaded bankruptcy discharge, if his conduct was fraudulent. *MAC Finance Plan* v. *Stone,* 106 N.H. 517. The creditor must, however, have relied on the debtor's false pretenses without knowledge of their falsity. *Eline* v. *Richard,* 296 Ky. 283; see *Bank of Monroe* v. *Gleeson,* 9 F.2d 520, 522. This assignment of error avails the defendant nothing.

We now consider whether the trial court was warranted in concluding that the plaintiff had established a reliance by it on the financial statement sufficient to bar a discharge of the debt. Section 17a (2) of the Bankruptcy Act (74 Stat. 409, 11 U.S.C. § 35 [a] [2] [1964]) provides in part that a discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as "are liabilities for obtaining money or property by false pretenses or false representations, or for ob-

taining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive." As pointed out in *Beneficial Finance Co.* v. *Machie,* 6 Conn. Cir. Ct. 37, 40, a valid discharge in bankruptcy is a prima facie defense against all debts, and the burden of proof is on the creditor to show otherwise. See *Sweet* v. *Ritter Finance Co.,* 263 F. Sup. 540. Not only does this burden of proof rest squarely on the creditor but he is confronted with the rule that all exceptions set forth in § 17a (2) are to be strictly construed. Id., 543. For the history of § 17a (2), see *Beneficial Finance Co.* v. *Machie,* supra, and cases cited.

In an action for false representations, the plaintiff must show (1) that the debtor made a material representation; (2) that at the time it was made it was false and the maker knew it to be false; (3) that it was made to induce the creditor to act on it; (4) that the creditor, relying on the representation, did act on it; and (5) that he did so act to his injury. *Helming* v. *Kashak,* 122 Conn. 641, 642.

The defendant in his answer did not deny the plaintiff's allegations but represented that he had insufficient knowledge of them and left the plaintiff to its proof. The finding of discrepancies in the representations in the financial statement and those appearing in the schedule A-3 of the bankruptcy petition was not challenged by the defendant. His contention is that the plaintiff failed to sustain its burden of proof as it related to the fourth element, that is, reliance by the plaintiff on the defendant's representations in his financial statement. The question whether the plaintiff relied on the misrepresentations of the defendant is ordinarily a matter

of fact, to be decided by the trial court. *M-A-C Loan Plan, Inc.* v. *Crane,* 4 Conn. Cir. Ct. 29, 33. In this respect, the court found "the plaintiff did not fully rely on defendant's financial statement."

The defendant contends that a creditor must show a full reliance on the financial statement and that a partial reliance does not satisfy the fourth requirement. In *M-A-C Loan Plan, Inc.* v. *Crane,* supra, it was held that the trial court was warranted in concluding that reliance on a financial statement was established where the testimony indicated that the plaintiff relied "heavily" on the statement. It is well settled that a partial reliance, all other factors being present, is sufficient to bar a discharge. 8A C.J.S., Bankruptcy, § 521 (8). In *First National Bank* v. *Clancy,* 279 F. Sup. 820, 822, the court held: "It is sufficient if this [reliance] was a substantial factor in causing the loss." See such cases as *Banks* v. *Siegel,* 181 F.2d 309; *Yates* v. *Boteler,* 163 F.2d 953; *In re Freeman,* 131 F. Sup. 437, 438; *In re Philpott,* 37 F. Sup. 43. Furthermore, "[t]he rule is that, after positive proof of false material representations to induce action, and that the action was taken, it will be inferred the action was in reliance on and induced by the representations; and the burden shifts to the falsifier to overcome the inference." *In re Neuman,* 251 F. 667; *Morris Plan Industrial Bank* v. *Parker,* 143 F.2d 665; *In re Freeman,* supra; *In re Savarese,* 56 F. Sup. 927.

The instant finding on this subject supports the conclusion that the plaintiff renewed the note, and increased the amount, on a reliance sufficient to satisfy the fourth requirement.

There is no error.

In this opinion KOSICKI and KINMONTH, Js., concurred.