BILLY GONZALES AND MARSHA GONZALES, APPEL-LANTS, v. AETNA FINANCE CO., RESPONDENT.

No. 6011

April 16, 1970                              468 P.2d 15

*Roy A. Woofter,* of Las Vegas, for Appellants.

*Stanley W. Pierce,* of Las Vegas, for Respondent.

## O P I N I O N

By the Court, ZENOFF, J.:

Billy and Marsha Gonzales, husband and wife, were borrowers of Aetna Finance Co., a lending institution. Their existing debt was seriously delinquent for the Gonzaleses were "summoned" into the company's office to bring the account current or the matter would be turned over to an attorney for legal action. They went to the Aetna office on October 4, 1967 and in the space of a few hours and in response to the lender's requests listed their debts on a short-form financial statement provided by Aetna and signed a promissory note for the $624.00 still due.

Both Mr. and Mrs. Gonzales testified that they filled out the financial information concerning their debts to the best of their knowledge and so stated on the financial form. For instance, the amount owed on their automobile they left with a question mark, but the total amount they listed as owing was $2,419.18, plus the automobile. By executing the promissory note their account was "refinanced," which means that on the company books it merely showed as being current, a loan, although they received no additional monies. Thereafter they did pay $85.00 on account, but on February 15, 1968 they filed bankruptcy listing Aetna as one of the unsecured creditors. On the bankruptcy schedules their debts totaled $3,993, a substantial difference from the $2,419.18 they had given to Aetna a few months before. Aetna did not object to the bankruptcy discharge but after it was granted Aetna sued

the Gonzaleses for their debt claiming that the extension of credit was made upon the false representations contained in the financial statement upon which Aetna had relied and that the Gonzaleses intended to defraud Aetna and that therefore the debt was not discharged. At the time, Aetna's representative testified that he would not have given the new loan had he known of all of the debts.

The trial court rendered judgment in favor of Aetna for $538.36 plus cost of suit and attorney's fees for $250. On appeal the borrowers claim that the debt was discharged since there was no intent on their part to defraud nor was there any reliance by the lender on the financial statement.

1. A creditor does not have to object to the discharge in bankruptcy if he subsequently claims that the debt was non-dischargeable. Household Finance Corp. v. Hamer, 238 A.2d 112 (Md.App. 1968); M. A. C. Loan Plan, Inc. v. Crane, 225 A.2d 33 (Conn.Cir. 1966); Time Finance Co. v. Nelson, 227 S.W.2d 189 (Ky.App. 1950). If the debt was non-dischargeable the whole amount is due, not just the increase owed upon renewal. Federal Finance Co. v. Merkel, 397 P.2d 436 (Wash. 1964); Seaboard Finance Co. v. Barnes, 148 N.W.2d 756 (Mich. 1967).

One of the purposes of the Bankruptcy Act is to relieve an honest debtor from the weight of oppressive indebtedness, and to permit him to start afresh, free from the obligations and responsibilities consequent upon business misfortunes, and to give him a clear field from future effort, unhampered by the pressures and discouragement of pre-existing debt. Tower Finance Corp. v. Winemiller, 192 N.E.2d 411 (Ill.App. 1963). Any exceptions under § 17(a)(2) of the Bankruptcy Act, 11 U.S.C.A. § 35(a)(2), are to be strictly construed. Gleason v. Thaw, 236 U.S. 558 (1915); Swanson Petroleum Corp. v. Cumberland, 167 N.W.2d 391 (Neb. 1969); United States v. Syros, 254 F.Supp. 195 (E.D.Mo. 1966).

§ 17(a)(2), 11 U.S.C.A. § 35(a)(2), as amended in 1960 provides that:

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as

". . . .

"(2) are liabilities for obtaining money or property by false pretenses or false representations, OR FOR OBTAINING MONEY OR PROPERTY ON CREDIT OR OBTAINING

AN EXTENSION OR RENEWAL OF CREDIT IN RELI-
ANCE UPON A MATERIALLY FALSE STATEMENT
IN WRITING RESPECTING HIS FINANCIAL CONDI-
TION MADE OR PUBLISHED OR CAUSED TO BE
MADE OR PUBLISHED IN ANY MANNER WHATSO-
EVER WITH INTENT TO DECEIVE, . . . ."

2. Once a person has a valid discharge in bankruptcy he has a prima facie defense against all debts and the burden of proof is then on the creditor to show that the debt is non-dischargeable. Sweet v. Ritter Finance Co., 263 F.Supp. 540 (W.D.Va. 1967); United States v. Syros, supra. Plaintiff has the burden of proving by a preponderance of evidence the elements of fraud necessary to come within the exception of § 17(a)(2), 11 U.S.C.A. § 35(a)(2). Atlas Credit Corp. v. Miller, 216 So.2d 100 (La.App. 1968); Household Finance Corp. v. Altenberg, 214 N.E.2d 667 (Ohio 1966); Sweet v. Ritter Finance Co., supra. The elements required under § 17(a)(2), 11 U.S.C.A. § 35(a)(2), are: that there were materially false representations in the financial statement, that the borrower made them with the intent of deceiving the lender, and that the lender relied upon and was misled by the false representation in granting credit to the borrower. 1 Collier on Bankruptcy § 17.16(3); United States v. Syros, supra; Sweet v. Ritter Finance Co., supra; Consolidated Plan of Conn., Inc. v. Cross, 239 A.2d 51 (Conn. Cir. 1967); Atlas Credit Corp. v. Miller, supra.

A. FALSE REPRESENTATIONS.

A discrepancy does exist in the Gonzales' financial statement given to Aetna and the debts listed on their bankruptcy schedule, but there is no evidence to show that Aetna ever checked out what was owed for the automobile or made any other inquiry regarding the Gonzaleses. Further, on the schedule they listed $750 for legal services which in fact was not owed, Aetna's balance was listed, and there were one or two more disputable items which would bring the bankruptcy total down to within $100 to $300 more than was recorded on the financial statement.

Under the pressurized circumstances, the differences become inconsequential. It appears more that the refinancing by Aetna was a ruse to get a signed statement from the customer in order to protect themselves against being listed in a possible

future bankruptcy. At least that is a well-known trick of the trade. See Sweet v. Ritter Finance Co., supra, at 542, and Excel Finance Treme, Inc. v. Noel, 138 So.2d 654 (La.App. 1962). It does not seem too great a burden to place upon the lender to require a credit check on a borrower. It is hard to believe that they did not know the realities of their customer's status when he was already delinquent. Cash Finance Service Inc. v. Haisch, 173 So.2d 851, 854 (La.App. 1965).

B.  INTENT TO DECEIVE.

One of the requirements is that there be an affirmative fraud, not one implied in law. 1 Collier on Bankruptcy, § 17.16(3); Swanson Petroleum Corp. v. Cumberland, supra; Beneficial Finance Co. v. Smith, 240 N.E.2d 106 (Ohio App. 1968); Sweet v. Ritter Finance Co., supra. The borrowers in this case at no time stated that they had failed to disclose all their debts. There is a dispute in the evidence as to whether or not Aetna's representative told them to list only their contractual debts but he does not deny that the borrowers did not know what they were to do when they were told to come to the office. Considering that the creditor must show affirmative fraud we find no evidence to uphold the trial court's findings that Mr. and Mrs. Gonzales intended to deceive the lender when they filled out an incomplete financial statement.

C.  RELIANCE BY THE LENDER ON THE FINAN-CIAL STATEMENT.

The lender made no credit check of the financial statement. The prior loan history of these people with Aetna, the refinance and financial statement, both completed in a short time, discount Aetna's contention that it relied upon the financial statement. Cash Finance Service Inc. v. Haisch, supra; Beneficial Finance Co. v. Crane, 239 A.2d 48 (Conn.Cir. 1967); Sweet v. Ritter Finance Co., supra; Public Finance Corp. v. Xarhakos, 202 A.2d 255 (Conn.Cir. 1964); Consolidated Credit Corp. v. Matherne, 217 So.2d 426 (La.App. 1969); Rouge Employees Credit Union v. Wilson, 151 N.W.2d 214 (Mich. App. 1967); Swanson Petroleum Corp. v. Cumberland, supra. Naturally, we do not have the benefit of observing the parties as they testify. Nor do we have a complete transcription of the testimony. We take this record as we find it and the reflection is a pattern that is common in the lending business. The innocent borrower is at a disadvantage. The loan company knows the significance of a complete financial statement, but

usually the borrower does not. While we do not condone escape from honest debt, we do know that a wage earner's financial life does not always go smoothly and that many times the unexpected upsets the expected and he finds himself hopelessly in debt. The purpose of the Bankruptcy Act is to relieve such people.

The elements of fraud do not exist in this case. There is no evidence that takes Mr. and Mrs. Gonzales out of the protection of their bankruptcy.

Counsel for appellants was unavoidably absent from the scheduled oral hearing. Counsel for respondent appeared without knowing that the attorney for appellants would not appear. This appeal was therefore submitted on briefs. He is entitled to reimbursement for his round-trip air fare and auto rental to be paid by appellants' counsel. IT IS SO ORDERED.

Reversed. Judgment shall enter for appellants with costs subject to the foregoing travel reimbursement already ordered.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.