In the Matter of David E. MURRAY, Sr., and Betty Murray, Debtors.

William H. HILL, Plaintiff,

v.

David E. MURRAY, Sr., and Betty Murray, d/b/a Murray Seed & Fertilizer Co., Defendants.

Bankruptcy No. 80–02589–SJ.

Adversary Action No. 80–0499–SJ.

United States Bankruptcy Court,
W. D. Missouri,
St. Joseph Division.

Jan. 6, 1981.

John M. Warren, St. Joseph, Mo., for plaintiff.

Maurice B. Soltz, Kansas City, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINT FOR A DECREE OF NONDISCHARGEABILITY

DENNIS J. STEWART, Bankruptcy Judge.

Plaintiff's complaint was filed herein on October 20, 1980. Therein, it was alleged that the defendants wrote a check in the sum of $6,855.55 to the plaintiff, which "was returned by the bank unpaid on January 11, 1980, and also on January 22, 1980, for the reason that there was [sic] insufficient funds in the bank to cover said check"; that the defendants subsequently represented that "a cashier's check was in the mail to cover the old one" and that an SBA loan had been applied for; that "the representations were false in that the Defendants had not mailed a Cashier's check to the Plaintiff and the Defendants had not been assured that there would be no problem in obtaining a loan from the Small Business Administration"; that "the representations were made with the intent to defraud Plaintiff and to delay him from pursuing legal remedies against the Defendants"; and that "the Debtors passed said insufficient funds check knowing that the check would not be paid by the drawee bank with the intent to defraud the Plaintiff ... intentionally violating Sections 570.120 V.A.M.S. and Section 558.011 V.A.M.S."

After the issues had been joined by the filing of an answer by the defendants, the trial of the merits of the complaint was conducted on December 22, 1980, in Kansas City, Missouri. The plaintiff appeared personally and by John Warren, Esquire, his counsel. The defendant David E. Murray, Sr., appeared personally and the defendants otherwise appeared by counsel, Maurice B. Soltz, Esquire.

The evidence then adduced showed the facts of this action to be simple and straightforward. The plaintiff William Hall and William A. Weddle delivered a load of corn to the defendant on or about December 10, 1979. On that date, the defendant issued checks to plaintiff in the sum of $6,855.55 and to Weddle in the sum of $6,855.54. At the time of the issuance of the checks, the defendants' bank account had a balance of only $849.31, clearly insufficient to defray the amount of either check. By his constantly pressuring the defendant David E. Murray, Sr., for payment, Weddle, at length, received payment

of his check. The check made to the plaintiff, in the meantime, was in the safekeeping of Weddle, to whom it had been manually delivered by the defendant David E. Murray, Sr. Weddle transmitted it, at length, to the plaintiff. The check, as alleged in the complaint, was twice returned for insufficient funds in the bank account. And the defendant David E. Murray, Sr., at one time gave the plaintiff some assurances that, ultimately, the check would be paid out of funds expected to be received from a loan from the Small Business Administration. This did not materialize. The defendant David E. Murray, Sr., also represented to Weddle at one time during this period of time that the check which had been issued to plaintiff was "good." Mr. Murray also contended, both in his answer in this action and in his testimony that, if the plaintiff would have timely presented his check at the bank for payment at the bank on which it was written, it might have been paid. The bank records, which were admitted in evidence in the course of the hearing, show that, from December 3, 1979, through January 3, 1980, the daily balance in the defendants' bank account never exceeded $7,487.33 and was ordinarily much lower. But it shows deposits of greater than that amount on several occasions. Thus, while it is conceivable that presentment of the check at a fortunate time would have resulted in payment, it seems unlikely that the check would have been paid.

### Conclusions of Law

This court and other courts have previously held that the issuance of an insufficient funds check does not give rise to a nondischargeable liability under § 523(a)(2) of the Bankruptcy Code or its predecessor, § 17a(2) of the Bankruptcy Act. See, e. g., *In re Eason*, 1 B.R. 604, 1980 CCH Bankruptcy Law Reports ¶ 67,350 (Bkrtcy., E.D. Va.1979), to the effect that "the mere writing of a check not backed by sufficient

funds and the fact that at the time it was uttered ... [the debtor] ... was aware of this fact is not enough to justify a finding of intentional fraud." See also *In re Marion Jerome Ray*, In Bankruptcy No. 78–60191–B–SJ (W.D.Mo.Bky. Dec. 4, 1978), to the following effect:

"The law is clear that a check does not constitute a financial statement. *Obrist v. Christensen*, 337 F.2d 220 (9th Cir. 1964), and cases there cited. Therefore, a claim of nondischargeability can lie only under the provisions of § 17a(2) for ... 'obtaining money or property by false pretenses or false representations.' ....
And, under the law governing, it is held that the rendering of an insufficient funds check, absent the making of a misrepresentation which gives rise to a liability which is nondischargeable under the provisions of § 17a(2) ... [does not] give rise to a liability which is nondischargeable ... See, e. g. *Blue Bonnet Creamery, Inc. v. Gulf Milk Ass'n*, 172 So.2d 133, 141 (La.App.1965) ('It must be conceded [that] an obligation arising from property obtained by the issuance of worthless checks is dischargeable in bankruptcy unless the debtor was guilty of misrepresentation to defraud in connection with the issuance of such checks.') .... '[I]f it were otherwise, a creditor could easily render his claim immune from discharge in bankruptcy by the simple expedient of demanding checks from the debtor.' *Id.* at 141.

\* \* \* \* \* \*

"Other cases on this general issue appear to agree with the result in the *Blue Bonnet* case. See *Swanson Petroleum Corp. v. Cumberland*, 184 Neb. 323, 167 N.W.2d 391 (1969), explicitly purporting to follow the *Blue Bonnet* rule ... "

On the basis of the foregoing authority, it is concluded that the request for a decree of nondischargeability must be denied.[1] It is accordingly

---

1. Plaintiff contends that the violation of state statutes regulating the issuance of insufficient funds checks suffices to make the indebtedness here in issue nondischargeable. It is true that,

in *Richland Farm Bureau v. Durbin*, 8 Ohio App. 312, 222 N.E.2d 315 (1966), it was held that a state statute made the issuance of "bad" checks "*prima-facie evidence of intent to de-*

ADJUDGED that the plaintiff's complaint herein for a decree of nondischargeability be, and it is hereby, denied.

fraud and of knowledge of insufficient funds in, or credit with, such bank or depository." But the ordinary rule, that state criminal statutes do not govern the issue of dischargeability *vel non,* is reflected in the line of cases which hold that a state criminal prosecution to collect an insufficient funds check which had been discharged in bankruptcy may, under certain conditions, be enjoined. See *In re Penny,* 414 F.Supp. 1113 (W.D.N.C.1976); *Matter of Barth,* 4 B.R. 141 (W.D.Mo.Bkrtcy.1980).