**William A. WYLIE, Trustee in Bankruptcy of the Estate of Clair V. Ward, bankrupt, Appellant,**

v.

**Clair V. WARD, Appellee.**

No. 16253.

United States Court of Appeals Ninth Circuit.

July 6, 1961.

Joseph Bernfeld, Quittner, Stutman & Treister, George M. Treister, Los Angeles, Cal., for appellant.

Ernest R. Utley, Utley & Houck, Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and KOELSCH, Circuit Judges.

CHAMBERS, Circuit Judge.

Ward, a tire dealer, in Alhambra, California, has been granted a discharge in bankruptcy by the referee, and the referee's decision was sustained by the district court on review. We do the trustee no injustice when we say that, in the practical sense, Ward's largest creditor, the United States Rubber Company, is the real party in interest.

For many years Ward was successful and prosperous in the service station, tire and accessory business. But sometime prior to 1950 he wanted to be bigger and decided to profit from the then greatly expanding business of retail selling of television sets. Before too long the whole television price structure collapsed on him. Eventually, as a consequence, he had no business at all. First, the sheriff came on May 19, 1953, with a state court attachment issued at the instance of the rubber company. After making heroic attempts to operate the business with the sheriff astride him, he made an assignment for the benefit of creditors on June 8, 1953. That lasted until the following September 28, 1953, when three of his television creditors filed a petition for involuntary bankruptcy. An adjudi-

cation thereof followed and Wylie was named trustee.[1]

There was a period of many months of financial illness before the rubber company sent the sheriff to make his seizure. The company, during this period, aware of Ward's shakiness, began to take more than a casual interest in his business condition. Monthly financial statements were required. (It may be said, as a minimum, that Ward made no effort to make himself look bad in these statements.) For awhile, from October, 1950, to August, 1952, the company had a representative full time reorganizing the bookkeeping and office procedures. Then the representative returned periodically until 1952 to oversee.

One aspect of the case concerns a very confusing system of consignment of tires by the rubber company to Ward. Consigned tires were commingled with tires owned by Ward. Perhaps an examination of the books of Ward would have disclosed which tires were consigned, and usually they were different models or types from the owned ones. And very often yesterday's consigned tire, with company approval, became the following day a tire purchased on credit. And on occasion the owned tire became a consigned one. The rubber company each month made its own check of the tire inventory. (This confusing consignment system was the source of many of the problems and the days spent by the referee on the hearings on the objections concerning Ward's financial statements.)

Error is charged on the rulings below on objections [2] in the following respects:

1. In failing to hold that Ward obtained credit by issuing false financial statements concerning his home and certain property (a lot) in Seal Beach, California;

2. In failing to hold that the appellee obtained credit by issuing false financial statements concerning the nature of his accounts receivable;

3. In holding that the appellee satisfactorily explained a deficiency in his assets, that is, what he did with some of his assets, if he ever had them;

4. In that the referee abused his discretion in letting the bankrupt reopen three times the hearings on the objections to discharge.

Less than half of the 17 objections to discharge survive for consideration on this appeal.[3] Of those here, it would seem clear that the referee might well have ruled in favor of the trustee on the issue of the correctness of the amounts

1. The business was conducted as C. V. Ward Tire Sales. It was a partnership consisting of C. V. Ward and his son. The record shows no participation in the business by the son. Certainly the son never gave the father any orders.

Both C. V. Ward, individually, and the partnership went into bankruptcy.

2. The objections here are to Ward's discharge as an individual. While the discharge of the partnership may have been disputed, it is not in this court.

3. Section 14, sub. c (3), (4) and (7) of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c (3), (4) and (7) provide as follows:

"The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; or (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors; * * * or (7) has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities: **Provided,** That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision [c], would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

of the accounts receivable reflected on the financial statements and the issue of what became of some of his assets, but he did not. The financial statements generally fairly summarized the books of the business and Ward's personal books.[4] But inquiry into the validity of the account books takes much of the 1235-page printed transcript and several pounds of unprinted exhibits. Meticulously we have gone over the entire record and each of the exhibits. The nub of appellee's now advantageous position is that the referee found that none of the financial statements was intentionally false (except on one where falsity was found to be immaterial), that the United States Rubber Company did not rely on the statements, and that it was not true that the bankrupt had failed to explain satisfactorily a loss of assets and a deficiency of assets to meet the liabilities.

Appellant throughout emphasizes the "provided" clause of Sec. 14, sub. c, which follows Subdivision (7), reading, "Provided, That if, upon the hearing of the objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision [c], would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

While two or three places may be marked where the referee says, or seems to say, that the "reasonable grounds for believing" have been reached, we cannot say that in the end the referee did not properly apply the rule.

■ The referee tried the case by installments, one numbered objection at a time, with many postponements. The parties seem to have prepared themselves as they went along. At one session a hole would be prepared for the bankrupt,

usually with his help. At the next session he would climb out of it. At first one sees a disposition on the part of the referee to deny the discharge, but as the case dragged before the referee, off and on from August, 1954, to February, 1958, three and a half years, one accustomed to read transcripts gets the feeling that the trustee will never prevail. Yet we cannot on a fair consideration of the record denounce the referee as obviously prejudiced or as being clearly erroneous in his findings of fact or wrong as to his conclusions of law.

■ Let us take one aspect of the case: reliance.[5] Clearly, company witnesses testified to reliance. But from Ward and his witnesses one can find nonreliance as a fact. And reliance in the end is to a considerable degree a matter of one's opinion. The referee could disregard the testimony of the company witnesses without publicly proclaiming them prevaricators. After the fact, with human frailty they may have rationalized themselves into believing they relied or partially relied. If Ward's testimony is believed, the rubber company had a pretty good idea at all times as to his financial health, and the statements were received by the company mostly as a ceremony.

As we have indicated, we cannot say the referee's findings of fact were clearly erroneous. A fortiori, we cannot hold as a matter of law that the grounds for denial of discharge were sustained.

Perhaps specific attention should be addressed to Ward's operations after the sheriff came with his attachment and maintained a keeper in possession. At least until the assignment of creditors became effective, Ward continued to operate the gasoline business with the sheriff encamped. In the incoming mail were checks from debtors. The checks fell into two categories—checks the proceeds

4. Ward, on the financial statements of C. V. Ward Tire Sales, the partnership, included an item of "C. V. Ward, personal" under "other assets." The amount was listed as one sum, and usually at $51,200.

5. Appellant is correct that partial reliance is enough and complete reliance is unnecessary. Rogers v. Gardner, 9 Cir., 225 F.2d 864. I Collier on Bankruptcy (14th Ed.) § 14.39.

of which were required to go to creditors who had assigned accounts, and checks on unfactored accounts. If there had been no sheriff, clearly the latter were Ward's to handle as he pleased.

For awhile, Ward turned over to the sheriff unencumbered checks (or the proceeds) as they came in the mail. Then, on the advice of his attorney, he caused the United States post office to divert his mail from the regular business place to general delivery. There he picked up the mail and opened it. If the remittance beneficially belonged to one of his factoring finance companies, he gave it to it. If it did not belong to one of them, he reduced it to cash and used it to buy gasoline or other supplies, trying to keep the business going. On some of the other aspects of Ward's conduct in dispute, if the referee had found in favor of the trustee, one would have to say Ward's conduct was bad. But on the feature of his mail, we find nothing offending our olfactory senses.

■ We think it cannot be held as a matter of law that here was an intent to hinder and delay. First, California law requires written instructions [6] on an attachment with description of the property to be attached. There was no unambiguous instruction to the sheriff to seize from day to day the incoming checks. And we cannot think that the referee was compelled to rule under the evidence on the diversion of the checks that there was an intent to hinder or delay any creditor.

■ As to the reopenings of the case charged to be an abuse of discretion, it is easy to understand appellant's exasperation. But it was in the area of the referee's discretion and we cannot say that the reopenings were so shocking that we should hold discretion was abused.

■ The order of the district court appealed from is affirmed. However, there is just too much bombast in appellee's brief here, all unworthy of counsel for appellee. Therefore, we leave appellee to bear his own costs.

**6.** California Code of Civil Procedure, § 542.