273 A.2d 852.

EAST PROVIDENCE CREDIT UNION *vs.* JACOB HARPOOTIAN *et al.*

FEBRUARY 26, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is the defendant Jacob Harpootian's appeal from a Superior Court judgment entered pursuant to the decision of a justice of that court holding that certain indebtedness of the defendant to the plaintiff had not been discharged in bankruptcy.

The record establishes that during the period commencing in May 1963, Jacob Harpootian, Edward Harpootian, and Ruth Harpootian made applications from time to time for a series of loans from plaintiff. In June 1966, plaintiff

commenced a civil action and in December of that year obtained a judgment against Jacob Harpootian and Edward Harpootian in the sum of $18,252.52 and against Ruth Harpootian in the sum of $955.85. These judgments were not appealed. Rather, in January 1967, defendant Jacob Harpootian, hereinafter called defendant, commenced voluntary bankruptcy proceedings, and on February 2 of that year, notice thereof was sent by the referee in bankruptcy to plaintiff, whose judgment had been listed by defendant as one of the obligations sought to be discharged. The record further establishes that on January 17, 1967, execution issued on plaintiff's judgment for $18,-252.52 and was returned *nulla bona* on February 1, 1967. On the same day an application for citation in supplementary proceedings was issued returnable February 13, 1967. Prior to the return day, specifically on February 10, 1967, defendant moved to stay the execution and all proceedings connected therewith, as well as leave to file supplemental pleading. This motion, filed pursuant to Super. R. Civ. P. 15(d), and seeking relief under Rule 62 of said rules, was predicated in substance on the February 2 adjudication of defendant's bankruptcy.

A hearing was held on said motion and permission was granted to defendant to file supplemental pleading. The pleading filed in consequence sets forth in substance defendant's adjudication in bankruptcy, the listing of plaintiff's judgment, and the notice to plaintiff of defendant's adjudication.[1] The defendant's pleading concluded with a prayer for a stay on the ground that plaintiff's action was

---

[1]Under §14(c) of the Bankruptcy Act, 11 U.S.C.A. §32(c), as amended, plaintiff could have entered his objection to a bankruptcy adjudication in the federal court. It opted, however, to ignore those proceedings and relied on its remedy in the state court under the then §17(a)(2), 11 U.S.C.A. §35(a)(2), as amended. See *White* v. *Public Loan Corp.*, 247 F.2d 601 (8th Cir. 1957).

based on a claim dischargeable in bankruptcy. Replying, plaintiff averred that its judgment was not so dischargeable since the indebtedness from which the judgment resulted consisted of loans procured by deceit and fraud on defendant's part, and thus fell within the provisions of §17(a)(2) of the Bankruptcy Act, 11 U.S.C.A. §35(a)(2), as amended.[2] It prayed for judgment on the original judgment and on defendant's supplemental plea.

Issue having been thus joined, the supplemental pleadings were heard by a Superior Court justice, who found that certain of defendant's obligations reduced to judgment were dischargeable but that others, totaling $8,708.60, were not.

A judgment to this effect was duly entered and defendant seasonably appealed to this court.

The sum of $8,708.60 represents the balance of two loans made by plaintiff to defendant. One such loan in the original sum of $6,378.30 was made by plaintiff to defendant on March 24, 1964, pursuant to an application made by the latter on the previous day. The second loan in the original sum of $3,831.70 was made November 8, 1965, on an application made therefor by defendant on the same day. At the time the judgment for $18,252.52 was entered, these loans had been reduced to $5,708.26 and $3,-000.34 respectively.

With regard to these two loans defendant signed applications which, directly above the line where he signed, contained the following statement: "I am not indebted

---

[2] "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for * * *."

to any other credit union, bank or loan agency, either as maker or endorser, except as stated hereon. The statements herein are made for the purpose of obtaining the loan, and are true to the best of my knowledge and belief."

Further down on the application forms an applicant is required to list such creditors as he may have and the amount of his indebtedness at the time application is made. On the applications of March 23, 1964, and November 8, 1965, there appears only the listing of defendant's outstanding indebtedness to plaintiff. However, at the time of both applications, defendant was an endorser on a note of the Greenland Markets of Mass. Inc., to Industrial National Bank in the sum of $11,500. Further, defendant was part owner of said Greenland Markets of Mass. Inc., and the loan to it by Industrial was made on defendant's application as an officer and stockholder. The plaintiff's claim that the two notes in question were not dischargeable in bankruptcy was predicated on §17(a)(2) of the Bankruptcy Act, 11 U.S.C.A. §35(a)(2), as amended. See n.2.

Applying the evidence adduced before him to the quoted section, the trial justice found in essence that the loans in question had been procured by the deceit and fraud contemplated in the Bankruptcy Act.

Specifically, after referring to the representation clause directly above defendant's signature on the applications of March 23, 1964 and November 8, 1965, and defendant's failure to list the Industrial National Bank Loan, he stated:

> "At the time he subscribed to this statement he was indebted to the Industrial National Bank in the sum of $11,500.00 as endorser of the promissory note of the Greenland Markets of Mass., Inc. dated February 27, 1964, and payable May 27, 1964. Therefore, as to the loan by the plaintiff on March 23, 1964, the

balance being $5,708.26 (Plaintiff's Exhibit "12"), the defendant's representation was not true to the fact, and since he had knowledge of his own act, he violated the terms of the application to the plaintiff and thus was not discharged in the bankruptcy proceeding."

Referring to the proper exhibits, the trial justice proceeded to discuss the loan made pursuant to the application of November 8, 1965, and reached the conclusion that this loan had similarly been made in reliance on false representation.

Continuing, he stated:

"Therefore, the plaintiff's reply to the defendant's supplemental pleading is sustained as to the aggregate sum of $8,708.60 and the plaintiff may go forward in proceedings to ascertain the ability of the defendant to pay the judgment to the extent of $8,708.60. In other respects, the plaintiff's pleading is not sustained."

It is the thrust of defendant's appeal that the trial justice committed prejudicial error in two particulars. These are: first, that he confined his consideration to the fact that defendant had signed the applications without listing the Industrial National Bank and failed to consider the evidence tending to nullify this. With regard to this contention, the record establishes that defendant was a stockholder in a Massachusetts corporation which was experiencing financial difficulties. In an effort to keep the Massachusetts business going, defendant sought and obtained a substantial loan from Industrial National Bank. This obligation was evidenced by a note which defendant signed as an endorser. He indicated at trial, however, that he thought this to be a business obligation and did not realize that his endorsement constituted a personal liability. Somewhat contradictorily, however, he also testified that he had advised plaintiff's manager that:

279 A  "I did make it clear I did not have any more borrowing capacity from the banking institution I was banking with * * *."

In any event, the essence of his contention is that the trial justice, in failing to state categorically that he disbelieved defendant, must have misconceived or overlooked defendant's testimony.

We are not persuaded. It is apparent from defendant's discursive testimony that he was thoroughly knowledgeable with business practices, and from all his dealings and experiences must have known that his personal endorsement on the Industrial National Bank note constituted an indebtedness which should not have been withheld from plaintiff. There is furthermore defendant's own testimony that he knew the Industrial loan to be a personal indebtedness and that he made such indebtedness known to plaintiff. This testimony, obviously offered for the purpose of persuading the trial justice that there had been no concealment of an outstanding indebtedness, was most likely considered by defendant to be another weapon in his arsenal of defense. It seems clear to us, however, that the trial justice chose not to accept this testimony and it is for the trier of fact to accept or move out such testimony as to him has or lacks merit. See *Russian* v. *Lipet,* 103 R. I. 461, 238 A.2d 369. Taking the view of defendant's evidence that is clearly apparent from this decision, the trial justice drew the reasonable inference that defendant's failure to make known all of his indebtedness was an omission designed to induce plaintiff to make the loans in question.

However, as vigorously contended by defendant an essential element of plaintiff's case is that the representations of indebtedness, as set forth in his applications even though false in that they were incomplete, must nevertheless have been relied on by plaintiff. See *Household Fi-*

*nance Corp.* v. *Hamer,* 248 Md. 567, 238 A.2d 112; *Branch* v. *Mills & Lupton Supply Co.,* 348 F.2d 991 (6th Cir. 1965); *East Providence Loan Co.* v. *Ernest,* 103 R. I. 259, 236 A.2d 639.

Recourse to this principle, however, is not open to the instant defendant. An examination of the testimony of plaintiff's president clearly establishes that the loans in question were made by plaintiff in reliance on the representations made in the applications of March 23, 1964 and November 8, 1965.

Finally, defendant argues that it is well established that deceit will not be found when the one who sustains the damage from a false affirmation might by ordinary vigilance and attention have ascertained that the statement on which he acted was false, citing *Bank of North America* v. *J. H. Sturdy & Co.,* 7 R. I. 109 and *Brown & others* v. *Castles,* 11 Cush. 348.

Both of these cases were decided favorably to the plaintiff creditors and merely indicated that there might be instances where deceit could not be established for the reason that simple diligence on the part of the creditor would have readily disclosed that the representations relied on were in fact not true. Such is not the situation in the case at bar. It is readily apparent from the facts in the instant case that to hold that plaintiff by its independent search could have discovered defendant's unlisted indebtedness to Industrial National would require a degree of diligence unreasonable to impose. *East Providence Loan Co.* v. *Ernest, supra.*

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Martin L. Greenwald,* for plaintiff.

*Stephen F. Mullen,* for defendant Jacob Harpootian.