**In, the Matter of Daniel Evans SEWELL, Bankrupt.**

**No. 18996.**

United States District Court,
S. D. Georgia,
Savannah Division.

Aug. 3, 1973.

John Wright Jones, Savannah, Ga., for bankrupt, Daniel Evans Sewell.

Walter C. Hartridge, II (Bouhan, Williams & Levy), Savannah, Ga., for applicant, First Bank of Savannah.

ORDER ON PETITION FOR REVIEW

LAWRENCE, Chief Judge.

This is a petition for Review of an Order of Dudley H. Bowen, Jr., Referee in Bankruptcy, dated May 30, 1973. He ruled that no part of a debt due by Daniel E. Sewell, the Bankrupt, to First Bank of Savannah is non-dischargeable under the Bankruptcy Act.

The indebtedness in question represented a loan to Coastal Developers, Inc. in 1971. Sewell who was the President and sole stockholder endorsed the corporate note which is involved. The schedules filed by the Bankrupt list a debt to the First Bank in the amount of $70,000 of which, claims the Creditor, $45,769.78 was non-dischargeable because that portion of the total indebtedness resulted from a materially false statement as to Sewell's financial condition. It was dated October 24, 1969. The loan was made in July, 1971. The record reflects that the financial statement in question was furnished to the Bank at the time the loan transaction was entered into. Sewell contends that it was true as of its 1969 date.

First Bank seeks a review of the Referee's finding that it was "unreasonable" for the Creditor to rely on a financial statement dated twenty-one months prior to the loan endorsed by the debtor.

The "Personal Financial Statement" dated October 24, 1969, reflected a net personal worth of $756,770. It was certified by Sewell to be true. The statement showed an asset evaluated at $500,000 representing 50% of the stock of Atlanta East, Inc. which was organized as a land development, management and manufacturing firm in industrial air parks and aircraft. Another asset listed in the statement, and valued at $150,000 represented a 50% interest in 72 acres of land in DeKalb County, Georgia, known as Gunn Airfield. The latter property was shown thereon to have a current value in October, 1969, of $500,000 less a note of $200,000 due by the copartnership consisting of Sewell and Johnnie Allison.

On July 9, 1971, the debtor obtained from First Bank of Savannah a loan of $35,000 on behalf of Coastal Developers, Inc. and personally endorsed the note of the corporation. In December, 1971, the debt was increased to $44,000 and subsequently was renewed by a note dated June 1, 1972, in the amount of $45,769.-78. The Bank objected to the discharge of that portion of the Bankrupt's total indebtedness to it, contending that such debt is not dischargeable since it represents a liability for obtaining money by false representation under Section 17 of the Act as amended. 11 U.S.C.A. § 35(a)(2).[1]

First Bank claims that the debtor obtained the loan to Coastal Developers, Inc. by misrepresenting his financial condition at the time it was made. The Creditor alleges that when the 1969 statement was furnished to it, the Bankrupt's interest in the 72 acres of land in DeKalb County had been conveyed by deed dated May 25, 1971, to Johnnie Allison. It further contends that about the same time the Bankrupt had surrendered his stock interest in Atlanta East, Inc. in consideration of the assumption by Allison of Sewell's liability as co-endorser on a note held by Citizens and Southern Bank in the approximate amount of $125,000. First Bank claims that it extended credit to the Bankrupt in July, 1971, on the strength of the Personal Financial Statement furnished by Sewell and which was required by it as a condition to the loan.

■■ "[I]f a bankrupt obtains credit based on a materially false statement in writing respecting his financial con-

---

[1]. "A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money . . . on credit . . . in reliance upon a materially false statement in writing respecting his financial condition made or published . . . with intent to deceive. . . ."

dition, knowingly made with intent to deceive, that statement being relied upon by the person extending the credit, then upon proper objection by the creditor the court may refuse to grant a discharge. . . ." In the Matter of Schweizer, 271 F.2d 95, 97 (7th Cir.). The false statement by which a bankrupt obtains credit which will bar discharge must be a financial statement as distinguished from mere misrepresentations. In re Noble, 42 F.Supp. 684 (D.C.Colo.). Part reliance on a statement is sufficient to prevent a discharge. Wylie, Trustee v. Ward, 292 F.2d 590 (9th Cir.); 9 Am.Jur.2d Bankruptcy §§ 702, 705.

■ "A [financial] statement may have a continuing effect so that the creditor will be warranted in relying on it for some time, even several months, after it is first made." 9 Am.Jur. Bankruptcy § 705, p. 531. Thus, in the light of prevailing business conditions, a statement made in February, containing continuing representations, might be relied on in November. In re Simon Weltman & Co., 2 F.2d 759 (S.D.N.Y.); see also Haimowich v. Mandel, 243 F.2d 338 (3rd Cir.). A financial statement which is true when given "will not constitute a false representation because of a subsequent change in the debtor's affairs" unless it amounts "to a continuing representation because of the debtor's duty to inform the creditor of changes in his (the debtor's) status." 1A Collier on Bankruptcy (14th ed.) § 17.16, p. 1642.

At the hearing before the Referee in January, 1973, the President of First Bank, William Dick, testified that on July 9, 1971, a copy of the October, 1969 Financial Statement was received in the mail as well as two other statements (Sewell & Associates and Coastal Development). He had requested Mr. Sewell to provide a financial statement. He said: "A loan of $35,000 had been sought by Mr. Sewell which was needed for about 30 days and which would be repaid from the pending sale of the Gunn Airfield property in DeKalb County." Mr. Dick further testified that he had no conversation with Mr. Sewell as to the statement. "The statement was fairly old but on the other hand the fact that the subsequent assets described in the statement were the ones which we were specifically dealing with led us to believe that it was still current and now subsequent to July 9 discussion we did have conversations about this financial statement." He said that after receipt of the financial statement "we funded the $35,000 loan." Transcript, p. 3. According to President Dick, there was a discussion in detail of the Statement when the note was renewed in December, 1971. He testified that it was represented to him that the sale of the Atlanta properties would "take us, the Bank, out of it eventually." Tr., p. 4. From the information he had in July, 1971, Mr. Dick was under the impression that "it was just a question of thirty days before the proceeds would be returned." Tr., p. 9.

Mr. Sewell testified that he was of the impression that the 1969 financial statement was already in the Bank's file as a result of previous transactions. He was certain that he would not have given a statement as to his personal financial status which was "18–19 months old." Tr., pp. 13–14. The debtor denied that he made any misrepresentation in procuring the loan. He claimed that in July, 1971, he gave the Bank an up-dated statement and that it would have shown the same values in controversy as the 1969 one. The Bankrupt testified in this respect: "I did feel that I owned it at that time. I subsequently signed a conveyance which was back-dated . . . I did not mislead them, I did own the property." Mr. Sewell said that the deed to Allison of the DeKalb County property was signed by him at the end of the year 1971. Tr., pp. 14–15. He testified that the conveyance which was recorded in November, 1971, was back-dated "on the recommendation of our accountant for tax purposes." Tr., p. 16.

In the Referee's Memorandum decision of May 30th last it is said that for

the Creditor to prevail there would have to be a finding that the Bank was entitled to "assume that the facts stated in a Financial Statement, dated some 21 months earlier than a loan transaction, are the same at the time of the loan transaction." No such presumption of law exists, declared the Referee. He concluded that reliance on such Statement was "not reasonable." An intent to deceive is ordinarily to be presumed in dischargeability cases but only when all the various elements of proof are met and that such was not the case here, the Referee added.

The decision denying the objection to the discharge of the Bankrupt was a formalization of conclusions orally expressed by the Referee at the close of the evidentiary hearing. He stated:

> "I think the Bank's reliance on a financial statement dated October 24, 1969, for a loan made in 1971 was an unreasonable reliance. By the date of the Financial Statement which is included on this copy shown as October 24, 1969, I can't determine otherwise —that, from the evidence available to us, that this statement was materially false at the time it was prepared. I see no clear cut representations from the Bankrupt that the items owned, the financial structure and the value of the items, was the very same at the time it was submitted as the time it was prepared."

▮ A referee's findings of fact are conclusive unless "clearly erroneous." General Order 47, 28 U.S.C.A., Bankruptcy Rules; Bazemore v. Stehling, 396 F.2d 701 (5th Cir.); In re Abraham, 421 F.2d 226 (5th Cir.).

▮ At the conclusion of the hearing the Referee stated that the testimony of the President of First Bank was "co-pious and concise, but the fact here is whether the Bank relied on the Statement presented 18 to 20 months after it was prepared." That issue was dealt with merely by finding that reliance was "unreasonable." Unreasonableness of reliance on a stale financial statement can partake both of fact and law. Here, however, the conclusion appears to be a conclusion of law drawn merely from length of time that elapsed between the date of the financial statement and the loan.

The decision denying the Bank's motion does not touch (or, where it does, only lightly) the thorny factual issues of the Bank's reliance on the 1969 financial statement; its truth or falsity when made; intent to deceive; concealment of the changes in the debtor's financial condition from what was represented in the financial statement; the debtor's duty to disclose same, and perhaps other factors bearing on whether a debt is non-dischargeable.[2]

Legal presumptions weigh heavily in reaching the result obtained by the Referee. Instead of findings in material areas of disputed fact, we have what amounts to a naked ruling of law. That such is so becomes clearer in the Referee's statement that his holding is "virtually without consideration of the Bankrupt's testimony." The ultimate issue of debt dischargeability should be decided in the ambience of the factual setting of that question. A reviewing Court should have the benefit of findings of fact in applying the "clearly erroneous" test and determining whether the legal conclusions of the Bankruptcy Court are correct in law.

The matter is accordingly remanded for further consideration and appropriate factual findings. The responsibility

---

2. For the effect of negligent reliance by a creditor on an outdated financial statement see 1972 cumulative supplement, 1A Collier on Bankruptcy (14th ed.) § 17.16, p. 1635. "In each of the following cases, the defendant bankrupts argued that with some effort the plaintiff creditors could have discovered the falsi-ty of the financial statements. Neither court, however, was willing to impose such a burden of diligence on the plaintiffs: Time Fin. Corp. v. Clark, 6 Conn. Cir. 200, 269 A.2d 88 (1969); East Providence Credit Union v. Harpootian, 108 R.I. 219, 273 A.2d 852 (1971)."

of determining what the facts are and of applying relevant rules of law belongs solely to the Referee. Nothing herein fetters or in any way impinges upon his authority in that respect.