**In re Henry B. CROCKETT, Debtor.**

**BURKE AND HERBERT BANK AND TRUST COMPANY, Plaintiff,**

v.

**Henry B. CROCKETT, Defendant.**

**Bankruptcy No. 80–00315.
Adv. No. 80–0080.**

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

June 3, 1981.

Roy B. Zimmerman, Alexandria, Va., for defendant/debtor.

Robert A. Payne, Alexandria, Va., for plaintiff.

MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing of a Complaint by Burke and Herbert Bank and Trust Company, by counsel, to determine the dischargeability of a debt of the Defendant, Henry B. Crockett, alleging that the Defendant submitted a false, written financial statement to the Plaintiff for the purpose of borrowing funds therefrom upon which the Plaintiff reasonably relied to its detriment. Upon the filing of an Answer by the Defendant, a trial was held. Upon the foregoing, the Court makes the following determination.

## STATEMENT OF THE FACTS

In August of 1977, the Defendant approached the Plaintiff for the purpose of obtaining a loan in the amount of $16,800. The Defendant submitted to the Plaintiff a financial statement dated May 24, 1977 to evidence his ability to repay the loan. (Plaintiff's Exhibit No. 10). The May 1977 financial statement was originally drafted either in anticipation of a loan to the Defendant at a later date or to reflect the Defendant's financial condition as a co-signer to a prior, unrelated loan. The financial statement reflected a net worth of approximately $148,212.90, an annual income of approximately $50,000 and a summary of the Defendant's assets and liabilities. The Defendant listed as part of his assets 85 acres in Roanoke, Virginia, with his 50% interest valued at $85,000, and a condominium valued at $75,000. C. S. Taylor Burke (Burke), President of Plaintiff bank, and a longtime acquaintance of the Defendant, reviewed the loan with the Defendant and granted same in the amount of $16,800. Burke testified that the main emphasis in granting the loan was placed upon the financial statement submitted by the Defendant.[1]

Regular payments were made on the loan and in June of 1978, when the note was reduced to $13,759.22, the Defendant requested that the bank renew the note and grant a further loan in the amount of $16,800. The Defendant submitted a new financial statement dated June 27, 1978 in support of his request to refinance the loan. (Plaintiff's Exhibit No. 1). This statement reflected an annual income of approximately $50,000, a net worth of $140,434 and contained a summary of the Defendant's assets and liabilities. He listed his 50% interest in the Roanoke property at $75,000 but did not show his condominium as an asset. This statement (as did the 1977 statement) contained a warranty that the statement was correct and continued to represent the true financial condition of the Defendant until written notice of a change of condition is given to the Plaintiff. Burke testified that this loan was also granted on the strength of the 1978 financial statement.

In December of 1978, the note was again renewed in the amount of $19,100. At that time, the balance on the June 1978 loan was $14,954.05. Burke testified that when the Defendant requested that the note be renewed in December of 1978, he and the Defendant discussed the changes in the June 1978 financial statement since June and also as compared with the May 1977 statement. The June 1978 statement was financially less favorable to the Defendant than the May 1977 statement in that the condominium listed as an asset on the 1977 statement in the amount of $75,000 was not listed on the 1978 statement. The Defendant stated that he had sold the condominium and, therefore, did not reflect the condominium as an asset.

In September of 1978 a $3,000 loan was granted to the Defendant, based upon the June 1978 financial statement. The Defendant stated to Burke there had been no

---

1. The financial statement as originally submitted contained an inconsistency in the value of the condominium as reflected on the balance sheet portion of the statement as compared with the sectional portion of the statement on the reverse side. Further, the Defendant reflected the face value of his insurance policies rather than the cash surrender value of the policies. The statement was altered by Burke to correct those errors.

significant changes from June of 1978 when the financial statement was supplied to the Plaintiff to September 1978 when the $3,000 loan was granted. Regular payments were made on this loan until September of 1979 when the Defendant ceased payments on the loan. The balance was approximately $2,246.90 at that time.

In April of 1979, the Defendant requested and secured his final loan from the Plaintiff. It was in the form of a 90-day note. Based on the June 1978 statement and the representation by the Defendant that no material changes had occurred, Plaintiff granted a loan to Defendant in the principal amount of $2,000. It was renewed and extended in July and again in October. The amount due on the renewed 90-day note on the eve of bankruptcy was $1,800, which amount remains unpaid today.

In 1976, Defendant's adjusted gross income, as reflected on his 1976 tax returns, amounted to $9,104.01; his gross receipts from his business were $20,496.25. (Plaintiff's Exhibit No. 12) In 1977, Defendant's adjusted gross income was $11,177.55; his gross receipts were $31,773.90. (Plaintiff's Exhibit No. 13) His 1978 tax returns reflected an adjusted gross income of minus $298.56. (Plaintiff's Exhibit No. 14) (Defendant's profit or loss from business statement was omitted from this exhibit; however, it was stipulated that it was substantially the same as in the previous years.)

As evidence of loans not revealed by the Defendant on his 1978 financial statement or in his reviews with Burke on subsequent loans, it was shown that on March 3, 1978, the Defendant obtained a loan from United Virginia Bank in the amount of $15,600. (Plaintiff's Exhibit No. 16). The balance due on that loan as of June 2, 1978, was $14,820. On September 6, 1978, the Defendant obtained a loan from United Virginia Bank in the amount of $9,040.80. (Plaintiff's Exhibit No. 17). In December 1978, the Defendant also obtained a loan from United Virginia Bank in the amount of $3,746.52. (Plaintiff's Exhibit No. 18).

In March 1978, a personal financial statement was also supplied by the Defendant to United Virginia Bank reflecting a total annual income of approximately $40,000 and a 50% interest in 85 acres in Roanoke County, Virginia, which reflected a market value of approximately $150,000. (Plaintiff's Exhibit No. 22).

The Defendant testified that he valued the Roanoke County property on his petition at $2,500. This value was obtained from the assessor's office for Roanoke County.

## CONCLUSIONS OF LAW

At the conclusion of the trial, Plaintiff moved the Court to allow an amendment to the pleadings so that the pleadings would conform to the evidence presented at trial. Plaintiff requested that the Complaint be amended to include the allegation that the Plaintiff relied upon the 1977 financial statement (Plaintiff's Exhibit No. 10) in granting the original $16,800 loan to the Defendant as well as Plaintiff's stated reliance on the 1978 financial statement (Plaintiff's Exhibit No. 1). Plaintiff, in support of its position, cited Federal Rule of Civil Procedure 15(b) and Bankruptcy Rule 715 which incorporates the federal rule. The Defendant noted his exception to the motion to amend.

■ Federal Rule of Civil Procedure 15(b) provides that when an issue not embraced by the pleadings is tried with the express or implied consent of the parties, it is to be treated in all respects as if it had been raised by the pleadings. The rule is intended to promote the objective of deciding cases on their merits rather than pleading skills and, therefore, a court should interpret Rule 15(b) liberally and permit an amendment whenever doing so will effectuate the underlying purpose of the rule. *Wright & Miller, Federal Practice & Procedure: Civil* § 1491.

In the present case, no objection was made to the introduction of the financial statement of 1977 into evidence. Transcript at 72–4. Further, the Defendant cross-examined the witness through whom the evidence was admitted at length con-

cerning the information contained in the 1977 statement. Transcript at 56, 66–70. It was in the Defendant's closing argument that he first contended that the reliance on the 1977 statement, and the loan obtained thereby was not an issue in this case by reason of the failure to so plead. At that point, Plaintiff moved to amend pursuant to Rule 15(b) to allow the Complaint to conform to the evidence in the case.

■ It is this Court's determination that it is appropriate under the circumstances to permit the amendment to include the 1977 financial statement as one of the two statements relied upon by the Plaintiff in granting the various loans. The complete thrust of the Complaint as originally filed, revolves around the reliance by the Plaintiff on a false financial statement given to the Plaintiff by the Defendant to enable the Defendant to obtain loans from the Plaintiff. This amendment to allow the Complaint to reflect the earlier financial statement does not change the nature of the case or the issue to be decided herein. This Court sees no surprise or prejudice in allowing such an amendment. As aptly stated in *Wright & Miller*, "A party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest the motion to conform." *Wright & Miller, Federal Practice & Procedure: Civil* § 1493.

■ Plaintiff contends that pursuant to 11 U.S.C. § 523(a)(2)(B) of the Bankruptcy Code, the debt of the Defendant to the Plaintiff is nondischargeable, and that the Plaintiff is entitled to judgment in the sum of the principal balances due on the several promissory notes. It is well settled that in order for a party to succeed in alleging a debt to be nondischargeable, it must prove that (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intent and purpose of deceiving the credi-

tor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va. 1967). Additionally, it is established that the reliance must be reasonable and that the Plaintiff must prove every element by clear and convincing evidence. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975).

From the evidence presented, the Court concludes that the Defendant knowingly misled the Plaintiff as to his income. While the Defendant represented in both the 1977 and 1978 financial statements that he was earning an annual income of approximately $50,000, it was shown through the tax returns that his income was well below this figure. In fact, Defendant's *gross receipts* were but $31,773.90 in 1977, his best year between 1975 and 1979. *See* Plaintiff's Exhibits No. 11–15. His highest net profit for these years was $11,177.55, grossly inferior to the reported $50,000 on Defendant's 1977 and 1978 financial statements.

■ It was further established that the Defendant represented on the 1977 and 1978 financial statements that the 85 acres of land in Roanoke County, Virginia, had a market value of approximately $150,000 (with his 50% interest being $85,000 and $75,000 respectively on his 1977 and 1978 statements) when, in fact, the property was assessed by the County of Roanoke at a total value of approximately $2,500.[2] Although Defendant contends that it was the Plaintiff which had suggested the excessive value on the land, the evidence established that Defendant had also used this $150,000 value in applying for a loan to United Virginia Bank in 1978. (*See* Plaintiff's Exhibit No. 22).

Moreover, it was established that the financial statement of 1978 was false as to

---

2. While the evidence relating to value of the Roanoke property is far from conclusive, it does tend to emphasize the large discrepancy between the Defendant's alleged value and its appraised value. The Court takes notice of Va.Code Ann. § 58–760 which requires all as-

sessments to be made at 100% of fair market value and concludes from this evidence that the Defendant set the value of the Roanoke property with reckless abandon, if not with actual intent to deceive.

the unsecured creditors for the Defendant had an outstanding unsecured installment loan with United Virginia Bank which was obtained on March 3, 1978, in the original amount of $15,600 which was not reflected on the financial statement of June 1978.

■ The financial statement of 1977 concerning the Defendant's income and the value of the Roanoke County property was clearly false. Similarly, the 1978 financial statement supplied by the Defendant was false as to income, the value of the Roanoke County property and the unsecured debts to other banks. The magnitude of the discrepancies between the actual and represented values of his income and liabilities on the financial statements make the financial statements materially false. This Court, in considering the financial condition of the Defendant at the time he procured the loans from the Plaintiff, can reach only the conclusion that the Defendant knowingly misrepresented his income, knowingly misrepresented his unsecured debts to other banks, and knowingly or recklessly overvalued the 85 acres of property in Roanoke County, Virginia. It seems equally clear that the Defendant caused the financial statements to be made or published with the intent to deceive. The fact that the Defendant maintained his loans in a current status and, therefore, may have intended to repay the loans at a later date is not material for he procured the money by deceit, and it is this intent to deceive which makes the debt nondischargeable.

■ Counsel for the Defendant contends that it was the Defendant's reputation in the community and the Defendant's 30-year association with Burke which induced the Plaintiff to grant the various loans, and not the reliance on the financial statements. To the contrary, however, the evidence established that the Defendant and Burke had lost touch of each other approximately 15 years prior to the granting of the loans and that it was the financial statements submitted by the Defendant which were the basis of the decision to grant the loans to the Defendant.

■ The use and reliance of a financial statement dated May of 1977 in assessing the financial condition of the Defendant for purposes of a loan in August of 1977 is not unreasonable. A financial statement may have a continuing effect over a period of time to warrant reliance by a creditor. *In re Sewell*, 361 F.Supp. 516, 518 (D.Ga. 1973). In June of 1978 the second financial statement was submitted to the Plaintiff and in that same month, in reliance thereon, Plaintiff loaned the Defendant $16,800, $13,759.22 of which went to refinance the existing loan of the Defendant. Regular payments were made by the Defendant on this loan and in December 1978, upon the representation of the Defendant that the June 1978 financial statement had not significantly changed, Plaintiff refinanced the June 1978 loan and granted a loan to the Defendant in the amount of $19,100, $14,954.05 of which went to pay off the existing loan. This Court finds that the warranty contained on the June 1978 statement that the statement can be considered as true and correct until a written notice of a change is given the Plaintiff, *together with* the oral representation that the statement still correctly reflects the financial condition of the Defendant is an adoption of the June 1978 statement and a republication of same in December of 1978 for the purpose of the December loan. *See* 3 *Collier on Bankruptcy*, ¶ 523.09[5][a] (15th ed.).

Similarly, the $3,000 installment loan obtained by the Defendant in September 1978 was based on the June 1978 statement. Plaintiff's reliance on a financial statement three months old is not unreasonable. *In re Sewell, supra.*

Finally, the April 1979 90-day note in the principal amount of $2,000 was granted on the basis of the June 1978 statement. It was represented to Plaintiff that the June 1978 statement correctly reflected Defendant's financial condition. This representation that the 1978 statement was a correct, accurate reflection of his financial condition as of April 1979 plus the warranty contained in the 1979 statement that the information was true until written notice of change is sufficient evidence of reasonable reliance on a written financial statement.

The damages sustained by the Plaintiff can be determined as follows: The August 1977 loan in the amount of $16,800 was paid off and refinanced in June of 1978 when a further $16,800 loan was loaned to the Defendant. In December 1978, the June 1978 loan was paid off and refinanced by the issuance of a $19,100 loan. By regular payments this loan was reduced to $17,822.22, which amount remains unpaid today. A $3,000 installment loan was granted to the Defendant in September 1978. With regular payments, this amount was reduced to $2,246.90, which amount remains unpaid today. Finally, in April 1979 a $2,000 90-day note was issued to the Defendant by the Plaintiff. This note was renewed in July 1979 and again in October 1979. The remaining balance on this is $1,800, which amount remains unpaid today. The total indebtedness to the Plaintiff is $21,869.12, which the Court determines to be nondischargeable.

An appropriate order will issue.